UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANE KIRKBY,

                Petitioner,                No. 04-CV-0456 (VEB)
    -vs-                                 **DECISION AND ORDER**

GARY FILION, Superintendent of
Coxsackie Correctional Facility,

                Respondent.
_____

**I.     Introduction**

*Pro se* petitioner Shane Kirkby ("petitioner" or "Kirkby") has filed a petition for a writ of habeas corpus pursuant to 20 8U. S. C. 2254 alleging that he is being held in state custody in violation of his federal constitutional rights. Kirkby's state custody arises from a judgment of conviction entered against him on June 21, 2000, following a jury trial in New York State Supreme Court (Ontario County).

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. §636(c)(1).

**II.    Factual Background and Procedural History**

        **A.     The Trial**

The judgment of conviction arises from Kirkby's allegedly having sodomized and sexually abused his half-sister's toddler-aged son on two occasions in 1998, when he was a guest at his half-sister's house. During the first visit, in April 1998, the victim's mother had called home from work to speak with Kirkby, who had been babysitting for the victim's mother. During the phone call, the mother could her hear son screaming in the background. She immediately

drove home to find the victim at the backdoor, crying. Kirkby was sitting alone in the living room all of the lights out. When asked Kirkby why the boy was crying petitioner explained that it was because he was trying to get the child to go to the bathroom but he didn't want to go. The victim's mother told Kirkby that her husband would be home at 10:00 PM. She returned to work.

After petitioner's April 1998 visit ended, the victim's mother noticed that he had developed "pimples on his penis" so she took him to the pediatrician on three occasions. Shortly after petitioner departed the victim's home, he developed a rash on his own body which he eventually admitted to his half-sister was scabies.

Kirkby paid another visit to his half-sister's home just after Thanksgiving 1998. The victim's mother questioned him about certain statements her son had made regarding the last visit, and asked Kirkby whether he had squeezed her son's elbow and "ate his pee-pee." Kirkby started to cry and responded that he had squeezed the victim's elbow while they were sitting at the kitchen table because the victim had refused to go to the bathroom. However, petitioner denied "eating [the victim's] pee-pee."

During this visit, which lasted two weeks, the victim's mother did not allow petitioner to babysit. Petitioner again slept on the couch. The victim's mother also slept in her son's room on several occasions during that visit. One evening, when she was already in her son's room, Kirkby walked by, "did a double take and then kind of leaned back and looked into the bedroom and asked if [she] was going to be sleeping" in the boy's room that night.

About one week after Kirkby left, the victim began complaining to his mother about "his bottom". Specifically, he told her that his "hiney [sic]" hurt "like somebody is cutting me with a knife". At about the same time, the mother noticed several blood stains on her son's bed linens.

There were no blood stains on Tyler's bed sheets prior to Kirkby's visit. In addition, the mother also noticed blood on her son's tail-bone.

The child was brought to see pediatrician Dr. Michael Jordan on March 29, 1999, based upon an allegation of possible sexual abuse. As discussed further, *infra*, Dr. Jordan concluded that the child's symptoms were consistent with forcible penetration of the anal/rectal area. The police were contacted and Kirkby was arrested on September 16, 1999, and transported to the New York State Police Barracks in Canandaigua for questioning. After being advised of his constitutional rights from a form, Kirkby read aloud that the certification on the form and signed and dated it. Kirkby then orally admitted to the investigator that while he was babysitting for his nephew in April of 1998, she was attempting to discipline the child during bath time. Kirkby related that he was dressed only in boxer shorts at the time. After grabbing the victim by the elbow and squeezing him, Kirkby then picked boy up and placed him on his (petitioner's) lap. At that point, according to petitioner, his penis may "possibly" have touched the victim's anus.

After Kirkby made oral admissions, he was again advised of his constitutional rights. Kirby was waived those rights for a second time in writing, and responded to a series of written questions posed by the police investigator. In response to one of those questions, Kirkby wrote that he had "wanted to know what it would feel like to rub my penis on [the victim]. I had an erection at the time, but I still had my boxers on. So I picked [the victim] up and sat him on my lap and rubbed against me". Kirby also stated that he had been rubbing his penis on [the victim]'s "butt".

At the police investigator's suggestion, Kirkby then wrote two letters of apology, one to his nephew (the victim), and one to his nephew's mother. In his letter to the victim, petitioner

stated that he was "very sorry for trouble I caused," and that "when you said that I may have put my penis in your anus, that it wasn't intentional. It was merely an accident. I sleep with my boxers on and in the morning, you always used to wake me up to sit on my lap in the morning I wake up having to go to the bathroom and I maybe [sic] erect. It just so happened one of those mornings you woke me up and sat on my lap. And sat in the wrong area to make you think those thoughts that I stuck my penis in your anus." T.159-62.[1] To his half-sister, the victim's mother, petitioner apologized for "what has happened," and admitted, "I just happen to rub up against him and then I stopped, knowing that I shouldn't do that . . . . I don't know why I did it. it could have been curiosity. It wasn't intentional, it was just curiosity, nothing more".T.163-64.

A different police investigator reviewed the statements and spoke with Kirkby about his interactions with the victim before that, Kirkby again was advised of his constitutional rights. Kirkby was informed that there was evidence of rectal injuries to the victim that they needed to discuss. During that conversation that ensued, Kirkby said that he did not think he had sexually abused the victim but that, based on the evidence shown to him, "I must have did [sic] it." T.224

Petitioner then gave a second written statement to the police. Again he was advised of, and waved, his rights. The statement included the following set of questions and answers by petitioner:

> Q. Regarding the sexual contact with [the victim] and yourself, can you describe what occurred?
> A. The same as I wrote in the other statement. I sat him on me and I took them off me because I knew it was wrong
> Q. What happened specifically?
> A. I set him on me while I was erect, still with my boxers on. I rubbed my penis on his cheeks while I slid him off.

---

[1] Citations to "T.__" refer to pages of the trial transcript.

> Q. Earlier we talked about Tyler having rectal injury and blood on his bed sheets. Do you know how this may have occurred?
> A. I may have slept walked into his room and I may have poked him with my finger or I may have poked him with my penis, but I don't remember any of it.

T.212-13, 217.

Later that same day, while at the police barracks, Kirkby spoke with the first police investigator again. After being advised of waiving his rights, Kirkby was posed a second set of questions. In response to the troopers inquiry as to how the victim might have sustained the rectal injuries described by the pediatrician, Kirkby stated as follows, "[Iit may have happened when I put him on my lap while I was erect and the head of my penis might have slid across his rectum. The end of my penis may have gone into his rectum a little, but because I still had my boxers on I wouldn't have felt it. . . . at the most, the end of my penis may have gone into [the victim]'s rectum about a centimeter. And after a few second [sic] of doing that, I felt that it was wrong and I didn't want nothing [sic] more to do with it." T.174.

This police investigator conducted an exit interview with petitioner in which he asked him, "what did I say that finally convinced you to tell the truth?" Kirkby replied, "That it would help me more." Kirkby also indicated that he felt better than he had before he confessed, and that he was "very much" sorry for what he had done. T.178.

The trial court denied trial counsel's motion to dismiss the indictment on the grounds that the prosecution presented insufficient evidence to corroborate petitioner's admissions. T.310-12. The trial court denied the motion. T.313-15.

The jury returned a verdict convicting Kirkby of the first degree sodomy (N.Y. Penal Law § 130.50(3) and the second degree (aggravated) sexual abuse (N.Y. Penal Law §

130.67(1)(c) that occurred in November 1998. He was acquitted of the April 1998 charge of first degree sodomy. Kirkby was sentenced to concurrent determinate prison terms of 16 years for the sodomy conviction and 10 years for the aggravated sexual abuse conviction, as well as five years of post-release supervision

  **B.**  **Post-Conviction Proceedings**

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court affirmed the first degree sodomy conviction but reversed the conviction for aggravated sexual abuse on the basis that the evidence was legally insufficient in that it was based solely on petitioner's alleged admission,"I may have slept [sic] walked into his room and I may have poked him with my finger," and there was no corroboration of that admission. *People v. Kirkby*, 295 A.D.2d 929, 929, 744 N.Y.S.2d 98 (App. Div. 4th Dept. 2002) (citing N.Y. CRIM. PROC. LAW § 60.50; other citations omitted). The court modified the judgment by reversing that part convicting petitioner of aggravated sexual abuse in the second degree, vacating the sentence imposed thereon and dismissing count three of the indictment. Leave to appeal to the New York Court of Appeals was denied on June 24, 2003. *People v. Kirkby*, 100 N.Y.2d 563 (N.Y. 2003).

This federal habeas petition followed in which Kirkby raises the following four claims: (1) the prosecution failed to present legally sufficient evidence the he was guilty of sodomy, including the necessary corroboration of his statements; (2) the trial court improperly denied the defense request for a missing witness charge with regard to the five-year-old victim; (3) the trial court improperly alleged the introduction of hearsay (the victim's statement to his mother that "his hiney [sic] hurt") which was not admissible under the "prompt outcry" exception; and (4)

the trial court erred in submitting counts one and three of the indictment to the jury.

Respondent answered the petition raising the defense of non-exhaustion and procedural default with regard to several of Kirkby's claims. Respondent also argues that, in any event, none of Kirkby's claims has merit and should be dismissed on substantive grounds.

For the reasons that follow, Kirkby's request for a writ of habeas corpus is denied and the petition is dismissed.

## III. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quotation omitted). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e]

[Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

IV. **Analysis of the Petition**

  A. **Ground One: Insufficiency of the evidence supporting the conviction**

On direct appeal, the Appellate Division rejected Kirkby's legal insufficiency claim as follows:

> Contrary to defendant's contention, the evidence is legally sufficient to support the conviction of sodomy. Defendant's letters of apology to the three-year-old victim and the victim's mother, in which defendant admitted that his penis entered the victim's anus were received in evidence and thus were before the jury. Defendant's admissions in those letters were corroborated by the testimony of the victim's mother that she discovered blood on the victim's bed sheets and by the medical testimony regarding a scar on the victim's anus consistent with forced penetration.

*People v. Kirkby*, 295 A.D.2d at 929 (citations omitted). The Appellate Division's rejection of Kirkby's claim of legal insufficiency, which constitutes an adjudication on the merits warranting deference under 28 U.S.C. § 2254(d), was a correct application of federal law and habeas relief accordingly is not warranted.

A habeas petitioner's due process challenge to the legal sufficiency of the evidence supporting his conviction must fail if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *accord*, *e.g.*, *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir.2005). "[P]etitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000). The reviewing court must "defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses," *United States v. LeRoy*, 687 F.2d 610, 616 (2d Cir.1982) (citation omitted), *cert. denied*, 459 U.S. 1174 (1983), and should "not second-guess a jury's finding on credibility[,]" *United States v. Stratton*, 779 F.2d 820, 828 (2d Cir.1985) (citation omitted), *cert. denied*, 476 U.S. 1162 (1986).

"State law determines the elements of a crime that must be supported by sufficient evidence to satisfy constitutional due process." *Policano*, 430 F.3d at 92. A person is guilty of sodomy in the first degree under former New York Penal Law § 130.50(3) when he "engages in oral sexual conduct or anal sexual conduct with another person . . . [w]ho is less than eleven years old. . . ." Former N.Y. PENAL LAW § 130.50(3).

The crux of Kirkby's insufficiency argument is the New York state law requirement that a conviction based upon a criminal defendant's confession or admission be corroborated by "additional proof that the offense charged has been committed." N.Y. CRIM. PROC. LAW § 60.50.[2] The statutory corroboration requirement "does not mandate submission of independent evidence

---

[2] "A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed." N.Y. Crim. Proc. Law § 60.50.

of every component of the crime charged, but instead calls for 'some proof, of whatever weight, that a crime was committed by someone[.]" *People v. Chico*, 90 N.Y.2d 585, 589 (N.Y. 1997) (internal citations omitted). Here, there was adequate evidence, independent of petitioner's confessions and letters of apologies that he engaged in anal sexual conduct with his three-year-old nephew in November of 1998.

First, the medical evidence injury was "consistent with forced penetration of the rectal area". The examining pediatrician, Dr. Jordan, testified that during the physical examination, he observed an "abnormality" on the victim's rectum, namely, a "readily-detectable" scar "right at the opening of the anus". This scar resulted from a past injury, although the doctor was unable to provide a specific date on which the injury occurred. The size and the depth of the scar, in addition to the vascular quality of the victim's rectal area, indicated that at the time of injury, which was alleged to have occurred in November of 1998, there was a "fair amount of bleeding". The victim's mother discovered blood on the victim's bed sheets after the petitioner's November 1998 visit to their household; there had not been any blood on the sheets prior petitioner coming to stay with them. She also found blood on her son's tail-bone at that time. Thus, the medical evidence and the physical evidence was strongly corroborative of the crime of sodomy having been committed.

Even if the independent evidence of petitioner's guilt of sodomy was inadequate under N.Y. Crim. Proc. Law § 60.50, however, habeas corpus relief could not be granted on such ground, because New York's confession corroboration rule is a state law requirement which embodies no federal constitutional principle. *See Robinson v. Smith*, 530 F. Supp. 1386, 1390-91 (S.D.N.Y. 1982) "(Even if the independent evidence of [the] murder were inadequate under

[N.Y. Crim. Proc. Law] section 60.50, however, habeas corpus relief could not be granted on such ground. New York's confession corroboration rule is a state law requirement which embodies no federal constitutional principle. New York's failure to comply with its own evidentiary rule is a matter of state law which cannot be reviewed by a federal habeas court.") (citing *Perez v. Metz*, 459 F. Supp. 1131, 1137 (S.D.N.Y. 1977) ("'Uncorroborated accomplice testimony,'" however, "may constitutionally provide the exclusive basis for a criminal conviction.") (quoting *United States v. De La Rosa*, 450 F.2d 1057, 1060 (3d Cir. 1971), *cert. denied*, 405 U.S. 927, 957 (1972) and citing *United States ex rel. Hicks v. Fay*, 230 F.Supp. 942, 946 (S.D.N.Y.1964)); *see also Perez*, 459 F. Supp. at 1137 ("Petitioners' claim is therefore improperly raised in this forum. A witness's status as an accomplice and the absence of corroborative evidence are questions solely of State law.") (citing *Johnson v. Turner*, 429 F.2d 1152, 1155 (10th Cir. 1970); *Application of Aschmeller*, 403 F. Supp. 983, 985 (S.D. S.D. 1975), *aff'd*, 534 F.2d 830 (8th Cir. 1976); *Lee v. Henderson*, 342 F. Supp. 561, 566 (W.D.N.Y. 1972); *United States ex rel. Hicks v. Fay*, 230 F. Supp. at 946). It is well-settled that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, this aspect of Kirkby's legal insufficiency claim does not present a viable basis for habeas relief and is dismissed. *Accord, e.g.*, *Robin*, 530 F. Supp. at 1390-91.

**Ground Two: Failure to issue missing witness charge**

Kirkby contends that the trial court erroneously denied his request for a missing witness jury instruction based upon the prosecution's failure to call the victim, five-years-old at the time of trial, as a witness. The Appellate Division rejected petitioner's contention on direct appeal because "[a] five-year-old child cannot be said to be knowledgeable about a material issue in a

case[.]" *People v. Kirkby*, 295 A.D.2d at 929.

Kirkby's missing witness charge claim cannot form a basis for habeas relief because he "can point to no clearly established Supreme Court precedent requiring a trial court to instruct the jury with respect to a missing witness. At any rate, '[w]hether a missing witness charge should be given lies in the sound discretion of the trial court.'" *Morales v. Strack*, No. 99-CV-1617, 2003 WL 21816963 at *4 (E.D.N.Y. July 3, 2003) (quoting *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir.1992) (in turn quoting *United States v. Torres*, 845 F.2d 1165, 1170-71 (2d Cir.1988)); *accord, e.g.*, *Manning v. Walker*; *Malik v. Kelley*. Kirkby's missing witness charge claim raises only an issue of state law that cannot justify federal habeas relief. *Accord, e.g.*, *Green v. McCray*, 02 Civ. 9332, 2003 WL 21688238 at *2 (S.D.N.Y. July 18, 2003).

Not only were the trial and state appellate courts' rulings not an unreasonable application of Supreme Court precedent, I do not find that the trial judge's decision was erroneous even as a matter of state law. Under New York state law, a "missing witness" instruction allows the jury "to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events." *People v. Savinon*, 100 N.Y.2d 192, 196 (N.Y. 2003). A missing witness charge should be given only where a witness is knowledgeable about a material issue in the case. *People v. Gonzalez*, 68 N.Y.2d 424, 428. New York courts have found no abuse of discretion in when a trial judge has refused to give a missing witness charge with respect to a child witness. *E.g.*, *People v. Knowels*, 187 A.D.2d 361, 361 ("The trial court did not abuse its discretion in refusing to give a missing witness charge with respect to the victim's 4½ year old son on the ground that, assuming the child was competent to testify, he "could not possibly engage in the sophisticated reasoning process required to draw

any reasonable inference with respect to the issue of consent to sexual activity under the circumstances presented in this case.") (App. Div. 1st Dept. 1992). Certainly, it cannot be said that the trial judge abused his discretion in declining to issue a missing witness charge with regard to Kirkby's victim, who was only three-years-old at the time of the incident and five-years-old at the time of trial. This claim is denied. *Accord*, *e.g.*, *Castro v. Fisher*, No. 04 CIV.0346 DLC AJP) 2004 WL 1637920 (S.D.N.Y. Jul 23, 2004), *report and recommendation adopted by Castro v. Fisher*, No. 04 CIV.346 DLC, 2004 WL 2525876 (S.D.N.Y. Nov 8, 2004).

    C.    **Ground Three:**    **Erroneous admission of hearsay evidence**

During the trial, the prosecution sought to introduce, through the testimony of the victim's mother, a statement made by the victim shortly after petitioner's departure from the victims' household in December of 1998. Specifically, the victim had complained to his mother that his "hiney [sic] hurt like it was being cut with a knife." The trial court considered the testimony to be corroborative proof of "the statements or confessions and admissions that [petitioner] made to the police," T.259. As the child victim did not testify, the trial court allowed it to be admitted, evidently under the "prompt outcry" exception to the hearsay rule. It was admitted eventually through the mother's testimony, at which point the trial court advised the jury that petitioner "made admissions or statements to the police, and those have to be corroborated or supported" and the testimony about the victim's complaint to his mother was admitted "for that purpose." T.289-90.

On direct appeal, the Appellate Division agreed with petitioner that the trial court had "erred in admitting the testimony of the victim's mother that the victim had complained to her "that his hiney hurt" one week following contact with defendant" because "[t]hat testimony was

not admissible under the prompt complaint exception to the hearsay rule." However, the appellate court held, the "error [wa]s harmless, . . . , because the other evidence of guilt with respect to the sodomy count is overwhelming and there is no significant probability that defendant would have been acquitted but for the error." *Id.* (citing *People v. Crimmins*, 36 N.Y.2d 230 (N.Y. 1975)).

Under New York law, evidence that the victim of a sexual assault promptly complained of the crime is admissible as an exception to the hearsay rule. *People v. Rice*, 75 N.Y.2d 929, 931 (N.Y. 1990). The exception, however, allows the witness to whom the victim made the complaint to testify *only* as to the fact that the complaint was made, without repeating the details of the complaint. *Id.* at 932; *see also People v. McDaniel*, 81 N.Y.2d 10, 17 (N.Y. 1993) ("One limitation on admissibility of such evidence is that, as its name suggests, the complaint must have been made promptly after the crime, and another is that only the fact of a complaint, not its accompanying details, may be elicited.").

When a habeas corpus petitioner alleges error as to the trial court's evidentiary rulings, the task of the federal court is to determine whether the petitioner was deprived of fundamental fairness at trial. *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988). Mere errors of state law have never been a basis for relief in a federal habeas corpus proceeding. *Smith v. Phillips*, 455 U.S. 209, 221 (1982). Kirkby's claim, as it asserts only a violation of a state evidentiary rule, cannot provide a basis for habeas relief. *Accord*, *e.g.*, *Warren v. Brunell*, No. 95-CV-6565L, 1997 WL 67828, at *11 (W.D.N.Y. Feb. 11, 1997) ("This claim [of erroneous admission of hearsay in violation of New York's "prompt outcry" exception], too, asserts only a violation of a state evidentiary rule . . . .").

As discussed above, an erroneous evidentiary ruling will not entitle the petitioner to habeas corpus relief unless the error was of a constitutional dimension. *Rosario*, 839 F.2d at 924. Here, the Appellate Division found that the error was "harmless, . . . , because the other evidence of guilt with respect to the sodomy count is overwhelming and there is no significant probability that defendant would have been acquitted but for the error[.]" *People v. Kirkby*, 295 A.D.2d at 929 (citing *People v. Crimmins*, 36 N.Y.2d at 241-42). In *People v. Crimmins*, the New York Court of Appeals specifically adopted the harmless error standard enunciated by the Supreme Court for cases on direct review that involve constitutional violations. *Crimmins*, 36 N.Y.2d at 241-42 (citing *Chapman v. California*, 386 U.S. 18 (1967) (holding, on direct review of criminal conviction, that court must find "that there is no reasonable possibility that the constitutional error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt"). It is well established that the *Chapman* harmless error standard is more generous to defendants than the *Brecht v. Abrahamson*[3] standard applied on collateral review.[4] The Supreme Court has instructed that the proper inquiry in post-AEDPA habeas cases (regardless of whether the state court has decided the harmless error issue) is to measure the harmfulness of the error against the *Brecht* "substantial and injurious effect" standard. The "principal factors" to be considered are the "importance of . . . the testimony, and the overall strength of the prosecution's case." *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000) (citing *Brecht v. Abrahamson*, 507 U.S. at 639). "[T]he strength of the prosecution's case 'is probably

---

[3] 507 U.S. 619, 638 (1993) (holding that the harmlessness inquiry on habeas review "is whether, in light of the record as a whole," the error "'had substantial and injurious effect or influence in determining the jury's verdict.'") (quoting *Kotteakos v. United States,* 328 U.S. 759, 776 (1946)

[4] Thus, logically, if a reviewing court concludes that an error is harmless under *Chapman v. California*, it is *a fortiori* harmless under *Brecht v. Abrahamson*.

the single most critical factor in determining whether error was harmless,'" *Id.* (quoting *Latine v. Mann*, 25 F.3d 1162, 1167-68 (2d Cir.1994) (internal quotation marks omitted in original), *cert. denied*, 514 U.S. 1006 (1995)).

Although the testimony about the young victim's "hiney" hurting him had the potential to inflame the jury, I do not find that this error of state law had a "substantial and injurious effect," *Brecht*, on the jury's verdict, given the strength of the prosecution's case against Kirkby. Moreover, even under *Chapman*'s standard, I cannot find that even absent the arguably erroneously admitted testimony, there is any reasonable possibility of a different verdict. In sum, this error of state law did not render Kirkby's trial "fundamentally unfair" and habeas relief accordingly is not warranted.

    **D.    Ground Four: Erroneous submission of count one (April 1998 sodomy) and count three (November 1998 aggravated sexual abuse) to the jury**

Kirkby here claims, as he did on direct appeal, that the trial court should not have submitted to the jury count one of the indictment, alleging a sodomy that occurred in April of 1998, and count three, alleging an aggravated sexual abuse that occurred in November or December of 1998. This argument fails to state a claim upon which habeas relief may be granted. First, the jury acquitted Kirkby of count one, so he has never been incarcerated pursuant to a judgment of conviction with regard to count one–as none exists. Second, on direct appeal, the Appellate Division reversed his conviction on count three, finding that the evidence was legally insufficient. Thus, at the time he filed his habeas petition, the conviction on count three had been vacated and Kirkby was no longer incarcerated pursuant to it. Ground Four is patently baseless and is dismissed.

## V. Conclusion

For the foregoing reasons, the Court denies petitioner Shane Kirkby's request for a writ of habeas corpus and dismisses the petition. Since the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: August 7, 2009
Rochester, New York.